UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────┐
│ USDS SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____               │
│ DATE FILED:  9-29-15                 │
└─────────────────────────────────────┘
```

SECURITIES AND EXCHANGE
COMMISSION,

                            Plaintiff,

        -v-                                    No. 12-cv-8167 (RJS)
                                               OPINION AND ORDER
LEE COLE, *et al.*,

                            Defendants.

RICHARD J. SULLIVAN, District Judge:

The Securities and Exchange Commission (the "SEC" or "Plaintiff") brings this action against Defendant Timothy Quintanilla ("Quintanilla" or "Defendant"), an accountant and licensed C.P.A., alleging violations of various anti-fraud provisions and auditing requirements of the Securities Act of 1933 (the "Securities Act") and the Exchange Act of 1934 (the "Exchange Act"), and the associated rules promulgated thereunder. (Doc. No. 1 ("Compl.").) Specifically, the SEC claims that Defendant fraudulently audited the financial statements of Electronic Game Card, Inc. ("EGMI"), a publicly-owned Nevada corporation and now-bankrupt marketer of credit-card sized electronic games intended for sale by lotteries as alternatives to scratch-off tickets. Now before the Court are the SEC's and Quintanilla's cross-motions for summary judgment. For the reasons set forth below, the Court denies the motions in their entirety.

## I. BACKGROUND

### A. Facts

At the outset, the Court notes that barely one-third of the 231 paragraphs in the parties' Local Civil Rule 56.1 Statements are undisputed. Indeed, the principal basis of the Court's denial of these cross-motions is the fact that the record is overflowing with genuine disputed issues of

fact that go to the heart of this action.[1]  At a high level of generality, the SEC submits that

Quintanilla's audits were "shams," that "Quintanilla knew or was reckless in not knowing that [his

accounting firm's] statements that it followed [Public Company Accounting Oversight Board

('PCAOB')] standards were false," and that "he knew that he had no basis to opine that EGMI's

financial statements squared with [Generally Accepted Accounting Principles ('GAAP')]."  (SEC

Br. at 3.)  In particular, the SEC claims that during his audits of EGMI, Quintanilla became aware

of and ignored glaring indicators of fraud.  For his part, Quintanilla maintains that "[t]he SEC's

entire case is fraud by hindsight" (Quintanilla Reply at 1), since, he asserts, "the SEC's 'red

flags' . . . occurred *after* EGMI's last audit in 2008" (Quintanilla Br. at 15).  The Court will provide

illustrative examples of these factual disputes later in this Opinion and Order.  For now, the Court

only briefly summarizes some of the relevant *undisputed* facts here.

As noted above, EGMI is a publicly-owned Nevada corporation.  (Quintanilla 56.1 Stmt.

¶ 1.)  From at least 2006 until 2009, Lee Cole and Linden Boyne functioned as interim Chief

Executive Officer and Chief Financial Officer of EGMI.[2]  (*Id.* ¶ 5.)  Neither party disputes that,

---

[1] The facts are drawn from the parties' Local Civil Rule 56.1 Statements. (Doc. No. 121 ("SEC 56.1 Stmt."); Doc. No. 128 ("Quintanilla 56.1 Stmt."); Doc. No. 136 ("SEC 56.1 Cntrstmt.").)  Unless otherwise noted, where only one party's 56.1 Statement is cited, the other party does not dispute the fact asserted, has offered no admissible evidence to refute that fact, or merely objects to inferences drawn from that fact.  In deciding these cross-motions, the Court also considered the SEC's memorandum of law in support of its motion for summary judgment (Doc. No. 119 ("SEC Br.")), Quintanilla's joint memorandum of law in support of his motion for summary judgment and in opposition to the SEC's motion (Doc. No. 127 ("Quintanilla Br.")), the SEC's joint reply memorandum of law in support of its motion and in opposition to Quintanilla's motion (Doc. No. 134 ("SEC Reply")), and Quintanilla's joint reply memorandum of law in support of his motion for summary judgment and sur-reply memorandum of law in opposition to the SEC's motion for summary judgment (Doc. No. 138 ("Quintanilla Reply")), along with the affidavits and exhibits attached thereto.

[2] The SEC originally brought this action against three individuals in addition to Quintanilla.  All three of these individuals have been terminated as parties.  On August 7, 2013, the Court entered default judgment in favor of the SEC with respect to Defendants Cole and Boyne's liability for violations of various provisions of the Securities Act, the Exchange Act, the Sarbanes-Oxley Act of 2002, and the associated rules promulgated thereunder.  (*See* Doc. No. 87 at 6 (finding liability on Causes of Action 1–3, 5, 7–15, and 18 of the Complaint).)  In an Opinion and Order dated September 22, 2014, the Court ordered that Cole and Boyne be jointly and severally liable for $12,345,908.74 in disgorgement and $2,324,842.25 in prejudgment interest, that they each be liable for a $7,500,000.00 civil fine, and that they be enjoined permanently from violating the securities laws, serving as officers or directors of any public company, and participating in any activities involving penny stock offerings.  (*See* Doc. No. 140.)  The Court entered

between 2006 and 2009, Cole and Boyne created and filed materially false financial statements; however, one of the central questions in this action is whether – at the time of the audits – Quintanilla, EGMI's auditor, knew that they were false. (*Id.* ¶ 6.) On September 28, 2010, EGMI filed for Chapter 7 bankruptcy protection in the U.S. Bankruptcy Court for the District of Nevada. (*Id.* ¶ 2.)

From March 2006 until December 2009, Quintanilla was a partner at Mendoza Berger & Co., LLP ("Mendoza Berger"), a public accounting firm. (*Id.* ¶ 190.) EGMI was Mendoza Berger's client. (*Id.* ¶ 194.) Prior to Mendoza Berger's involvement with EGMI, EGMI's SEC filings were reviewed and audited by Robison, Hill & Company, a Utah accounting firm, which had issued EGMI an unqualified "clean" audit opinion for 2005. (*Id.* ¶¶ 200, 202.) Cole and Boyne were officers of EGMI while Robison, Hill & Company conducted this audit. (*Id.* ¶ 201.)

As the engagement partner at Mendoza Berger, Quintanilla was the auditor with "final responsibility" for the firm's audits of EGMI. (*Id.* ¶¶ 36, 194.) Just as Robison, Hill & Company had done in 2005, Mendoza Berger issued unqualified "clean" audit reports on EGMI's financial statements for the 2006, 2007, and 2008 fiscal years, which are the subject of this action. (*Id.* ¶ 37.) Quintanilla maintains, and the SEC disputes, that "[d]uring Quintanilla's entire tenure at Mendoza Berger, he did not suspect any fraud or wrongdoing on the part of Lee Cole, Linden Boyne, or any other officer or employee of EGMI." (*Id.* ¶ 194.) As a partner in Mendoza Berger, Quintanilla received approximately $28,000 for his work on EGMI matters. (*Id.* ¶ 224.)

---

Final Judgment against Cole and Boyne on October 8, 2014. (Doc. No. 141.) The SEC further named Defendant Kevin B. Donovan ("Donovan"), who also is not relevant to the instant motion. In 2009, Donovan served as EGMI's Chief Executive Officer and co-chairman of EGMI's board of directors. (*See* Doc. No. 1.) On September 12, 2013, Donovan consented to entry of a Final Judgment without admitting or denying the allegations of the Complaint. (Doc. No. 89.)

At the end of 2009, Quintanilla left Mendoza Berger, and he currently operates his own practice. (*Id.* ¶¶ 190, 218.) In January or February of 2010, shortly after Quintanilla's departure, Mendoza Berger informed Quintanilla that information had emerged that challenged the authenticity of EGMI's Credit Suisse bank account. (*Id.* ¶ 219.) After receiving this information, Quintanilla advised Mendoza Berger to "pull" the audit reports. (*Id.*) On June 8, 2012, Mendoza Berger filed for Chapter 7 bankruptcy protection in the U.S. Bankruptcy Court for the Central District of California, and has ceased operations. (*Id.* ¶¶ 26, 191.)

### B. Procedural History

The SEC commenced this action on November 8, 2012, asserting various violations of the federal securities laws' anti-fraud provisions and auditing requirements, including: (1) Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, alleging both primary and aiding and abetting violations; (2) Section 17(a) of the Securities Act; and (3) Sections 10A(a)(1) and 10A(b)(1) of the Exchange Act, alleging both primary and aiding and abetting violations. (Compl.) On May 8, 2013, the Court denied Quintanilla's motion to dismiss the Complaint for failure to state a claim. (Doc. No. 64.) At the conclusion of discovery, the parties filed the instant cross-motions for summary judgment. (Doc. Nos. 118, 126.)

In its motion, the SEC argues that the record evidence establishes all of the elements of the primary liability claims it brings against Quintanilla under Section 10(b), Rule 10b-5, and Section 17(a), and the aiding and abetting claims brought pursuant to Section 10(b), 10A(a)(1), and 10A(b)(1). (SEC Br. at 21–29.) The SEC does not, however, move for summary judgment with respect to its primary liability claim against Quintanilla for failing to comply with the auditing requirements under Section 10A of the Exchange Act. (*Id.* at 1.)

For his part, Quintanilla opposes the SEC's motion and seeks summary judgment in his favor with respect to all of the SEC's claims, arguing largely that the SEC cannot satisfy its scienter

requirement, but also advancing a series of other legal arguments, including the following: (1) the SEC's Rule 10b-5(a) and (c) "scheme liability" claims are duplicative of its Rule 10b-5(b) deceptive statement claim; (2) the SEC cannot support its Section 17(a)(2) claim because Quintanilla did not obtain money or property by means of his conduct; (3) the SEC's Section 17(a) claim further fails since Quintanilla was an auditor – not a seller – and thus his conduct did not occur in the offer or sale of a security; and (4) the SEC's Section 10A claims are unsupported since primary violations of this provision apply *only* to registered public accounting firms. (Quintanilla Br.; Quintanilla Reply.)

## II. LEGAL STANDARD

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of New*

5

*York*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted). "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477 U.S. at 252, are insufficient to create a genuinely disputed fact. A moving party is "entitled to judgment as a matter of law" on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party "'show[s]' – that is, point[s] out . . . – that there is an absence of evidence [in the record] to support the nonmoving party's [position]," *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "On cross-motions for summary judgment, each moving party 'has the burden of presenting evidence to support its motion that would allow the district court, if appropriate, to direct a verdict in its favor.'" *McDonnell v. First Unum Life Ins. Co.*, No. 10-cv-8140 (RPP), 2013 WL 3975941, at *13 (S.D.N.Y. Aug. 5, 2013) (quoting *Barhold v. Rodriguez*, 863 F.2d 233, 236 (2d Cir. 1988)).

## III. DISCUSSION

### A. Quintanilla's Evidentiary Objections

Before reaching the merits of the parties' summary judgment motions, the Court briefly addresses Defendant's objections to virtually every piece of record evidence submitted in connection with the SEC's summary judgment motion. (*See* Doc. No. 130; Quintanilla 56.1 Stmt.) As set forth in the Federal Rules of Civil Procedure, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The Second Circuit has explained that "[t]he evidence considered on summary judgment must generally be admissible evidence." *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 205 (2d Cir. 2005). Where, as here, a district court is making

evidentiary determinations in deciding a motion for summary judgment, it is well established that the court "'has broad discretion in choosing whether to admit evidence.'" *Presbyterian Church Of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009) (quoting *Raskin v. Wyatt Co.*, 125 F.3d 55, 65 (2d Cir. 1997)); *see also LaSalle Bank Nat'l Ass'n*, 424 F.3d at 205 ("Even on summary judgment, a district court 'has wide discretion in determining which evidence is admissible . . . .'" (quoting *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998))). Here, nothing in Quintanilla's objections persuades the Court that the SEC's evidence is inadmissible. Indeed, Quintanilla's objections – which are essentially a series of undifferentiated, blanket objections to the entire record on hearsay, relevance, and foundational grounds – are unsupported boilerplate assertions presented in a clumsy attempt to strike the entirety of the SEC's evidence. The Court has little difficulty rejecting such objections. Beyond the problematic and unhelpful form of Quintanilla's objections, they also lack merit: as a representative and telling example, many of the purportedly objectionable documents are Mendoza Berger e-mails and work documents, which have been authenticated by stipulation (*see, e.g.*, Doc. Nos. 120-112 ("Ex. 113"); 120-113 ("Ex. 114")), are plainly relevant since they relate directly to Quintanilla's potential liability, and fall under the business records exception to Defendant's hearsay objections. Accordingly, the Court overrules Quintanilla's evidentiary objections and, for the purpose of resolving the parties' cross-motions for summary judgment, will consider the SEC's evidence.[3]

---

[3] In a footnote in its reply brief and in two paragraphs of its Local Civil Rule 56.1 Counterstatement, the SEC has also moved to strike the entire supplemental declaration submitted by Quintanilla's expert, Michael Deutchman, in connection with the summary judgment briefing (Doc. No. 129) on the grounds that, since Deutchman "previously produced an expert report and was deposed twice in this litigation," his submission is a "back-door expert declaration contrary to the court's scheduling orders and F.R.C.P. 26(A)(2)." (SEC Reply at 8 n.1; *see* SEC 56.1 Cntrstmt. ¶¶ 226–27.) The Court need not resolve the SEC's motion at this time, since the Court would reach the same outcome – denying the parties' cross-motions in their entirety – regardless of whether it strikes Deutchman's supplemental declaration.

B. Section 10(b), Rule 10b-5, and Section 17(a) Claims

Both parties move for summary judgment with respect to the SEC's claims against Quintanilla under Exchange Act Section 10(b) and Rule 10b-5 and Securities Act Section 17(a). For purposes of the instant cross-motions, "these statutes impose identical burdens of proof on the SEC," *SEC v. KPMG LLP*, 412 F. Supp. 2d 349, 371 (S.D.N.Y. 2006), with the exception that the Section 17(a)(2) and (a)(3) claims do not require scienter, *see SEC v. Ginder*, 752 F.3d 569, 574 (2d Cir. 2014) (holding that, for Section 17(a)(2) and (a)(3) claims, "[a] showing of negligence is sufficient" (citation omitted)); *see also SEC v. Pentagon Capital Mgmt. PLC*, 725 F.3d 279, 285 (2d Cir. 2013) ("The requirements for a violation of Section 17(a) apply only to a sale of securities but in other respects are the same as Section 10(b) and Rule 10b–5, except that 'no showing of scienter is required for the SEC to obtain an injunction under [Section 17] (a)(2) or (a)(3).'" (quoting *SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999))).

Thus, to prove a violation of Section 10(b), Rule 10b-5, and Section 17(a)(1), the SEC must demonstrate that Defendant: "'(1) made a material misrepresentation or a material omission as to which he had a duty to speak, or used a fraudulent device; (2) *with scienter*; (3) in connection with the purchase or sale of securities.'" *Id.* (emphasis added) (quoting *Monarch Funding Corp.*, 192 F.3d at 308). As noted above, to prove a violation of Section 17(a)(2) and (a)(3), the SEC need only show negligence, rather than scienter. *See Ginder*, 752 F.3d at 574.

1. Section 10(b), Rule 10b-5, and Section 17(a)(1) Claims:  Scienter

Both parties have moved for summary judgment on the basis of scienter.  However, the Second Circuit has left no doubt that scienter issues are seldom appropriate for resolution at the summary judgment stage. *See, e.g., Press v. Chem. Inv. Servs. Corp.*, 166 F.3d 529, 538 (2d Cir. 1999) ("The Second Circuit has been lenient in allowing scienter issues to withstand summary judgment based on fairly tenuous inferences." (citing *In re Time Warner Inc. Sec. Litig.*, 9 F.3d

259, 270–71 (2d Cir. 1993))); *id.* ("'Whether a given intent existed is generally a question of fact,'

appropriate for resolution by the trier of fact." (quoting *Grandon v. Merrill Lynch & Co.*, 147 F.3d

184, 194 (2d Cir. 1998))); *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1467 (2d Cir. 1996)

("Whether or not a given intent existed, is, of course, a question of fact." (citation omitted));

*Wechsler v. Steinberg*, 733 F.2d 1054, 1058 (2d Cir. 1984) ("Issues of motive and intent are usually

inappropriate for disposition on summary judgment." (citations omitted)); *see also KPMG LLP*,

412 F. Supp. 2d at 378–85 (denying auditors' summary judgment motion on scienter grounds).

   "The requisite state of mind, or scienter, in an action under section 10(b) and Rule 10b-

5 . . . is an intent to deceive, manipulate or defraud." *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir.

2001) (citation and internal quotation marks omitted). It is settled law that recklessness satisfies

this standard, *see KPMG LLP*, 412 F. Supp. 2d at 378, so that intent may be inferred from conduct

that is "highly unreasonable, representing an extreme departure from the standards of ordinary care

to the extent that the danger was either known to the defendant or so obvious that the defendant

must have been aware of it," *Rothman v. Gregor*, 220 F.3d 81, 90 (2d Cir. 2000) (citation and

internal quotation marks omitted). For an auditor such as Quintanilla, this recklessness must

"approximate an actual intent to aid in the fraud being perpetrated by the audited company." *Id.*

at 98 (citations omitted).

   Here, even a cursory review of the parties' Local Civil Rule 56.1 Statements reveals that

summary judgment may not be granted with respect to scienter. Specifically, the Court finds that

there are numerous disputes of fact pertaining to what tasks Quintanilla performed in auditing

EGMI and whether Mendoza Berger employees ever approached Quintanilla during the audits

with concerns. For example, the parties dispute whether: (1) between March 19, 2007 and March

23, 2007, Quintanilla performed fieldwork on the 2006 audit of EGMI in the United Kingdom

(Quintanilla 56.1 Stmt. ¶¶ 46, 197); (2) Mendoza Berger auditor Beatrice Falcon contemporaneously objected to Quintanilla issuing the 2007 audit report on the grounds that "Quintanilla did not have enough information" (*id.* ¶¶ 55–56); and (3) Quintanilla's partner, Jim Berger, performed a quality control review on Quintanilla's audit work (*id.* ¶ 73). Furthermore, although the parties do not dispute the size of the six-person Mendoza Berger audit team (*see, e.g.,* *id.* ¶¶ 49, 196), competing inferences can be drawn from this information, such that the Court cannot conclude whether the staffing of the 2006, 2007, and 2008 audits was legally sufficient. Such disputes preclude the Court from resolving whether Quintanilla possessed "an intent to deceive, manipulate or defraud." Accordingly, the parties' cross-motions for summary judgment must be denied as to the SEC's claims against Quintanilla under Section 10(b), Rule 10b-5, and Section 17(a)(1).

### 2.  Section 17(a)(2) and (a)(3) Claims:  Negligence

With respect to the SEC's Section 17(a)(2) and (a)(3) claims, the Court finds that summary judgment is also unwarranted, since many of the parties' factual disputes discussed above make it impossible to decide, at this stage, whether Quintanilla complied with the applicable standard of care.

Section 17(a)(2) and (a)(3) of the Securities Act make it unlawful for a party, directly or indirectly and in the offer or sale of securities, "to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact," or to engage in any practice or course of business "which operates or would operate as a fraud or deceit upon the purchaser." 15 U.S.C. § 77q(a).  As noted above, unlike claims brought under Section 17(a)(1), a showing of negligence is sufficient to prove that a defendant violated Section 17(a)(2) and (a)(3). *See Ginder*, 752 F.3d at 574. Under these provisions, the definition of negligence is "the failure to use reasonable care, which is the degree of care that a reasonably careful person would use under

like circumstances." Instructions of Law to the Jury at 13, *SEC v. Stoker*, No. 11-cv-7388 (JSR) (S.D.N.Y. July 31, 2012), ECF No. 89 [hereinafter "*Stoker* Instructions"]; *see also SEC v. Shanahan*, 646 F.3d 536, 545 (8th Cir. 2011) (defining negligence, in the context of Section 17(a)(2) and (a)(3) claims, as "the degree of care that an ordinarily careful person would use under the same or similar circumstances"). Such negligence "may consist either of *doing* something that a reasonably careful person *would not do* under like circumstances, or in *failing* to do something that a reasonably careful person *would do* under like circumstances." *Stoker* Instructions at 13 (emphases in original). As with the above discussion of scienter, "[n]egligence is typically a jury determination . . . ." *SEC v. Fitzgerald*, 135 F. Supp. 2d 992, 1020 (N.D. Cal. 2001) (involving Section 17(a)(2) and (a)(3) claims). Consequently, the parties' factual disputes likewise prevent a finding, at this juncture, as to the reasonableness of Quintanilla's conduct.

For example, the factual disputes concerning whether or not Quintanilla performed any fieldwork on the 2006 audit (Quintanilla 56.1 Stmt. ¶¶ 46, 197), whether Falcon contemporaneously expressed concerns to Quintanilla about issuing the 2007 audit report (*id.* ¶¶ 55–56), and whether Berger ever performed a quality control review on the audit (*id.* ¶ 73), are all directly relevant for determining negligence. Additionally, although it is undisputed that in 2008 Mendoza Berger received a purported bank confirmation from Credit Suisse via facsimile, competing inferences can be drawn from this fact, since the parties disagree about whether it is unusual for an auditor, in the ordinary course of business, to receive a bank confirmation via facsimile (*id.* ¶ 205). Accordingly, the Court also denies the parties' cross-motions for summary judgment as to the SEC's Section 17(a)(2) and (a)(3) claims.

3. Section 17(a)(2) Claim: Quintanilla Obtained Money or Property By Means of His Conduct

Quintanilla, relying solely on this Court's decision in *SEC v. Syron*, 934 F. Supp. 2d 609 (S.D.N.Y. 2013), next contends that the SEC cannot support its Section 17(a)(2) claim because

Quintanilla did not "obtain money or property by means of" his conduct.  In particular, Quintanilla argues that "[t]he SEC has presented no evidence that Quintanilla ever received extravagant gifts, bonuses, or perks for his EGMI audit work."  (Quintanilla Br. at 20.)

However, contrary to Quintanilla's assertion that the SEC must prove that Defendant received a "fraud bonus" in order to bring a valid Section 17(a)(2) claim, this Court in *Syron* imposed no such requirement, nor – to the Court's knowledge – has any other court.  *See, e.g.*, *SEC v. Tourre*, No. 10-cv-3229 (KBF), 2014 WL 61864, at *4 (S.D.N.Y. Jan. 7, 2014) ("Section 17(a)(2) does not require the SEC to show that a banker like Tourre received some sort of additional 'fraud bonus' on top of his base salary in order to establish liability; as the statute clearly states, the SEC must prove that Tourre obtained money or property by means of a material misstatement or omission."); *see also Syron*, 934 F. Supp. 2d at 639 ("Of course, this is not to say that a defendant may not be liable if he obtains money or property in a highly roundabout manner. The statute clearly creates liability where a defendant 'indirectly' obtains money or property . . . .").  Rather, the Court in *Syron* dismissed the SEC's Section 17(a)(2) claim because "[t]he Complaint simply lacks *any* allegation that Syron and Cook's compensation was affected, *in any way*, by the stock offerings." *Id.* at 638 (emphases added).  Here, in contrast, it is undisputed that, as a partner in Mendoza Berger, Quintanilla received approximately $28,000 for his work on EGMI matters. (Quintanilla 56.1 Stmt. ¶ 224).  Put simply, since the facts here are readily distinguishable from those in *Syron*, the Court denies Quintanilla's summary judgment motion with respect to the SEC's Section 17(a)(2) claim.

4. Section 17(a) Claim: Quintanilla's Conduct Occurred in the Offer or Sale of a Security

Quintanilla further asserts that the SEC's Section 17(a) claim fails because Quintanilla was an auditor – not a seller of securities – and thus his conduct did not occur "in the offer or sale of any securities," as required by Section 17(a) of the Securities Act. Having reviewed the Complaint,

the record evidence, and the applicable law, the Court finds that the SEC properly brings its Section 17(a) claim. Indeed, Quintanilla's meritless argument warrants limited discussion. In addressing Section 17(a)'s requirements that fraud occur "in" the "offer" or "sale" of securities, the Supreme Court has explained that "Congress expressly intended to define [these statutory terms] broadly" and that these terms "are expansive enough to encompass the entire selling process." *United States v. Naftalin*, 441 U.S. 768, 773 (1979). Thus, Quintanilla misstates the law when he claims that Section 17(a) liability is limited to sellers. *See, e.g.*, *SEC v. Badian*, No. 06-cv-2621 (LTS) (DFE), 2008 WL 3914872, at *6 (S.D.N.Y. Aug. 22, 2008) ("Section 17(a) has been held applicable to persons who neither passed title nor solicited offers on behalf of securities issuers or sellers." (collecting cases)). More specifically, countless cases have held that audit partners may be liable under Section 17(a) of the Securities Act. *See, e.g.*, *SEC v. Drysdale Sec. Corp.*, 785 F.2d 38, 39 (2d Cir. 1986); *KPMG LLP*, 412 F. Supp. 2d at 392. Accordingly, the Court denies Quintanilla's summary judgment motion on this ground.

### 5. The SEC's Rule 10b-5(a) and (c) "Scheme Liability" Claims

Quintanilla also moves for summary judgment on the grounds that the SEC's Rule 10b-5(a) and (c) "scheme liability" claims are duplicative of its Rule 10b-5(b) deceptive statement claim. However, courts confronted with this issue have repeatedly allowed both "scheme liability" and deceptive statement claims to go forward "where the plaintiffs allege both that the defendants made misrepresentations in violations of Rule 10b-5(b), as well as that the defendants undertook a deceptive scheme or course of conduct *that went beyond the misrepresentations*." *In re Alstom SA*, 406 F. Supp. 2d 433, 475 (S.D.N.Y. 2005) (emphasis added); *see also SEC v. Stoker*, 865 F. Supp. 2d 457, 467 (S.D.N.Y. 2012). Here, the SEC unmistakably alleges and points to evidence that, although disputed by Defendant, could lead a reasonable fact-finder to conclude that Quintanilla engaged in several deceptive acts *in addition to* the misstatements, including but not

13

limited to backdating and fabricating work papers to deceive the PCAOB, which regularly inspected Mendoza Berger (SEC 56.1 Stmt. ¶¶ 61–71), and omitting audit steps (*id.* ¶¶ 45–48). These allegations of separate and inherently deceptive acts are plainly sufficient to plead a deceptive scheme claim and thus withstand Quintanilla's summary judgment motion. *See Stoker*, 865 F. Supp. 2d at 457 (finding, as here, that allegations of additional deceptive conduct were sufficient to plead scheme liability). Accordingly, since the Court finds that the SEC has sufficiently shown that Quintanilla may be subject to Rule 10b-5(a) and (c) "scheme liability" in addition to Rule 10b-5(b) liability, the Court rejects Quintanilla's summary judgment motion on this ground.

## C. Section 10A Claims

Both parties move for summary judgment with respect to the SEC's claims against Quintanilla under the auditing requirements set forth in Sections 10A(a)(1) and 10A(b)(1) of the Exchange Act, except the SEC moves only with respect to its aiding and abetting liability claim. As relevant here, Section 10A mandates that audits "*by a registered public accounting firm* shall include, in accordance with generally accepted auditing standards, . . . procedures designed to provide *reasonable assurance of detecting illegal acts* that would have a direct and material effect on the determination of financial statement amounts . . . ." 15 U.S.C. § 78j–1 (emphases added). Furthermore, if "*in the course of conducting an audit* . . . the registered public accounting firm *detects or otherwise becomes aware* of information indicating that an illegal act . . . has or may have occurred, the firm shall . . . determine whether it is likely that an illegal act has occurred . . . ." *Id.* (emphases added).

### 1. Primary Violations Do Not Apply *Only* to Registered Public Accounting Firms

Quintanilla, in advancing his motion for summary judgment, first argues that since he is an individual and not a "registered public accounting firm," he cannot, as a matter of law, be held

primarily liable for violations of Section 10A of the Exchange Act.  As Quintanilla points out, Sections 10A(a) and (b)(1) both refer to a *"registered public accounting firm,"* but not explicitly to the individuals associated with the entity.  Section 2(a)(12) of the Sarbanes-Oxley Act of 2002 ("SOX"), which is referenced in the Exchange Act, defines a "registered public accounting firm" as "a public accounting firm registered with the [PCAOB]."  In another SOX definition, "a public accounting firm" is defined as:

> (A) a proprietorship, partnership, incorporated association, corporation, limited liability company, limited liability partnership, or other *legal entity* that is engaged in the practice of public accounting or preparing or issuing audit reports; and

> (B) to the extent so designated by the rules of the [PCAOB], *any associated person of any entity* described in subparagraph (A).

15 U.S.C. § 7201(11) (emphases added).  Although the PCAOB has not specifically defined "any associated person," Judge Cote has persuasively reasoned – after a lengthy analysis of the relevant statutory language – that "[t]he statutory definition makes clear . . . [that] the statutory default is broadly inclusive."  *KPMG LLP*, 412 F. Supp. 2d at 386.  Thus, in *KPMG LLP*, Judge Cote concluded that "[u]nder the associated definition, as partners in KPMG, the [individual] defendants are clearly encompassed by the terms of the amended Section 10A(b)."  *Id.* at 387; *see also SEC v. Solucorp Indus., Ltd.*, 197 F. Supp. 2d 4, 10 (S.D.N.Y. 2002) (concluding, in a case prior to the SOX amendments, that an individual public accountant was "required to abide by the procedures enumerated in § 10A(b) if, during the course of an audit, he detects or otherwise becomes aware of *information* indicating that an illegal act . . . has *or may have* occurred." (emphasis in original) (citation and internal quotation marks omitted)).  In sum, both courts in this District that have confronted this issue have determined that individuals can be held primarily liable under Section 10A(b), and Defendant points to no authority to the contrary nor to any persuasive reason why the

statute should be construed differently.  Thus, the Court concludes that Quintanilla, as an audit partner, may be held primarily liable for violations of Section 10(A).  Accordingly, the Court rejects Quintanilla's summary judgment motion on this ground.

2. Disputed Issues of Material Fact Preclude Summary Judgment

Finally, as with the scienter and negligence requirements of the anti-fraud provisions discussed above, the Court finds that, with respect to the Exchange Act Section 10A claims, disputed issues of material fact again preclude summary judgment on either a primary or an aiding and abetting liability theory.  Specifically, since the parties vigorously contest which tasks Quintanilla performed in auditing EGMI, including whether Quintanilla performed fieldwork on the 2006 audit of EGMI in the United Kingdom (Quintanilla 56.1 Stmt. ¶¶ 46, 197) or whether concurring partner Jim Berger performed a quality control review on Quintanilla's audit (*id.* ¶ 73), the Court cannot resolve whether Quintanilla's and Mendoza Berger's audits included procedures designed to provide reasonable assurance of detecting illegal acts.  Likewise, since the parties contest whether Mendoza Berger auditor Beatrice Falcon contemporaneously objected to Quintanilla issuing the 2007 audit report (*id.* ¶¶ 55–56), the Court cannot conclude whether, *in the course of conducting their audits*, Quintanilla and Mendoza Berger detected or otherwise became aware of information indicating that an illegal act had or may have occurred.  *See Solucorp Indus., Ltd.*, 197 F. Supp. 2d at 11 (denying a defendant-accountant's summary judgment motion after finding that, as here, "there is a genuine issue of fact as to whether [the defendant-accountant] was aware of information indicating that an illegal act may have occurred").  Accordingly, the Court also denies the parties' cross-motions for summary judgment as to the SEC's Section 10A claims.

IV. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED THAT the parties' cross-motions for summary judgment are DENIED.

IT IS FURTHER ORDERED THAT the parties shall commence trial on the morning of November 16, 2015 at 9:30 a.m. in Courtroom 905 of the Thurgood Marshall United States District Court for the Southern District of New York, 40 Foley Square, New York, New York.

IT IS FURTHER ORDERED THAT, by October 21, 2015, the parties shall submit a Joint Proposed Pretrial Order that includes, in separately numbered paragraphs, the information required by Federal Rule of Civil Procedure 26(a)(3) and the following:

i.    The full caption of the action;

ii.   The names, addresses (including firm names), and telephone and fax numbers of trial counsel;

iii.  A brief statement by Plaintiff as to the basis of subject-matter jurisdiction, and a brief statement by Defendants to the presence or absence of subject-matter jurisdiction, along with citations to all authority relied on and relevant facts as to citizenship and jurisdictional amount;

iv.   A brief summary by each party of the claims and defenses that the party has asserted which remain to be tried, without recital of evidentiary matters but including citations to all statutes relied on, and all claims and defenses previously asserted which are not to be tried;

v.    A statement by each party as to whether the case is to be tried with or without a jury, and the number of trial days needed;

17

vi.     A statement as to whether all parties have consented to trial of the case by a magistrate judge (without identifying which party or parties have or have not so consented);

vii.     Any stipulations of fact or law that have been agreed to by the parties;

viii.     A statement by each party as to the witnesses whose testimony is to be offered in its case in chief, indicating whether such witnesses will testify in person or by deposition;

ix.     A designation by each party of deposition testimony to be offered in its case in chief, with any cross-designations and objections by any other party;

x.     A list by each party of exhibits to be offered in its case in chief, with an indication of whether any party objects to the exhibit and a *brief* statement of the nature of the objection (e.g., "relevance," "authenticity," "hearsay"); and

xi.     A statement of whether the parties consent to less than a unanimous verdict.

IT IS FURTHER ORDERED THAT the parties shall file the following with the Joint Proposed Pretrial Order:

i.     In jury cases, *joint* proposed voir dire questions, verdict form, and jury instructions. These joint submissions should consist of single documents, jointly composed, noting any areas of disagreement between the parties. The voir dire questions and jury instructions shall include both the text of any requested question or instruction as well as a citation, if relevant, to the authority from which it derives. A Word version of these documents shall also be submitted by e-mail.

ii.     In non-jury cases, affidavits constituting the direct testimony of each trial witness, except for testimony of an adverse party, a person whose attendance must be

compelled by subpoena, or a person for whom a party has requested and the Court has agreed to hear direct testimony during the trial. Three business days after submission of such affidavits, counsel for each party shall submit a list of all affiants whom he or she intends to cross-examine at the trial. Only those witnesses who will be cross-examined need appear at trial. The original affidavit shall be marked as an exhibit at trial.

iii.   In non-jury cases, proposed findings of fact and conclusions of law. Proposed findings of fact should be detailed and a Word version should be submitted by e-mail.

iv.   Motions addressing any evidentiary or other issues which should be resolved *in limine*.

v.   In any case where a party believes it would be useful, a pretrial memorandum, not to exceed 10 pages.

vi.   All deposition excerpts which will be offered as substantive evidence, as well as a one-page synopsis (with page references) of those excerpts for each deposition.

vii.   All documentary evidence.

IT IS FURTHER ORDERED THAT, within one week of the filing of the Joint Proposed Pretrial Order, any party may file the following documents:

i.   Oppositions to any motions *in limine*; and

ii.   Oppositions to any legal argument in a pretrial memorandum.

IT IS FURTHER ORDERED THAT the parties shall appear for a final pretrial conference on Wednesday, November 4, 2015, at 11:00 a.m. to discuss the trial, which, as ordered above, will commence on the morning of November 16, 2015.

19

The Clerk of the Court is respectfully directed to terminate the motions pending at docket entries 118 and 126.

SO ORDERED.

Dated:      September 29, 2015
            New York, New York

                                        _____
                                        RICHARD J. SULLIVAN
                                        UNITED STATES DISTRICT JUDGE